Johnson, J.
The verdict of the jury was general -— all of the issues made by the pleadings were resolved in favor of the defendant. This finding of course embraced the issue tendered in the second defense — that in the exercise of due diligence and extraordinary care the defendant was unable to prevent the embankment of the hydraulic and “Swift Run”' pond from breaking away; that it was not possible to cut a trench in the embankment at the county line, nor could defendant have protected plaintiffs’ property by cutting the bank 500 feet north of the point at which it broke; and that the damages to plaintiffs, if any, were occasioned by an act of God, without any fault or neglect of defendant, its officers or servants.
The downfall of water in March, 1913, has passed into the history of the state as its most extraordinary and disastrous flood. The damage and suffering it caused throughout this and adjoining states is a matter of general knowledge. It was so widespread and so devastating that the legis *47 lature less than a month after the flood passed what is generally known as the “Flood Emergency Act,” 103 Ohio Laws, 760, to authorize the duly constituted authorities of the different subdivisions of the state to borrow and expend money for the purpose of the repair, reconstruction and replacement of public property and ways injured; and this was done as a necessity for the public health, safety and convenience.
The validity of this legislation was upheld in the following June, Assur v. Cincinnati et al., 88 Ohio St., 181, in which case the wholly unusual and unprecedented character of the flood was recognized and stated to be a matter of general knowledge.
The court of appeals in reversing the judgment of the common pleas in the case at bar held that there was error in the giving of defendant’s charges Nos. 1, 2 and 6, hereinafter set forth, which were given before argument to the jury,, and in employing in charges Nos. 2 and 6 “the terms ‘intervenes,’ ‘proximate’ and ‘proximately,’ being terms of technical significance, without explanation as to their application as to the evidence and the facts;” and in ignoring in charge 6 the possibility of contributing causes. It also found error in' the general charge.
Before the giving of the charges requested by defendant the court had given a number of special charges requested by the plaintiffs, the first of which is as follows:
“The term ‘Act of God’ in its legal significance, means any irresistible disaster, the result of natural *48 causes, such as earthquakes, violent storms, lightning and unprecedented floods. It is such a disaster arising from such causes, and which could not have been reasonably anticipated, guarded against or resisted. It must be due directly and exclusively to such a natural cause without human intervention. It must proceed from the violence of nature or the force of the elements alone, and with which the agency of man had nothing to do. If the injury is caused by the agency of man cooperating' with the violence of nature or the force of the elements, it is not the ‘Act of God.’ If there be the action of such a natural cause or force yet if the resulting injury is directly contributed to by the hand of man, it is not in law the ‘Act of God.’ If the injury is in part occasioned by the wrongful act or the negligent act of any person concurring therein and contributing thereto,. such person will be liable therefor and this applies to a municipal corporation as well as to a natural person.”
In addition to the above, the court had also given, at the request of the plaintiffs, five other special charges, in which the nature of the reservoirs involved in the case and their character as dangerous agencies in case of overflow or bursting of embankments are described. The duty of the city in such circumstances and its liability for damages occurring by reason of failure to perform the duty or for its negligent performance are also specifically and fully stated and explained.
A Plaintiffs’ charge No. 1, as above set out, is a correct and comprehensive statement of the law on the subject.
*49 The propositions it contains have substantially been approved by the authorities. 1 Corpus Juris, 1172.
It is equally well settled that if the vis major is so unusual and overwhelming as to do the damage by its own power, without reference to and independently of any negligence by defendant, there is no liability.
In 1 Shearman & Redfield on Negligence (6 ed.), Section 39, it is said: “It is also agreed that, if the negligence of the defendant concurs with the other cause of the injury, in point of time and place, or otherwise so directly contributes to the plaintiff’s damage that it is reasonably certain that the other cause alone would not have sufficed to produce it, the defendant is liable, notwithstanding he may not have anticipated or been bound to anticipate the interference of the superior force which, concurring with his own negligence, produced the damage. But if the superior force would have produced the same damage, whether the defendant had been negligent or not, his negligence is not deemed the cause of the injury.”
In Central Trust Co. v. Wabash, St. L. & P. Ry. Co., 57 Fed. Rep., 441, 448, the general rule as to the duty of the owners of dams and embankments to use care and skill in their construction and maintenance so as to not injure others in times of usual, ordinary and expected floods is stated, and it is there said: “But his liability extends no further, and he is not held responsible for inevitable accidents, nor for injuries occasioned by extraordinary floods, which could not be anticipated or guarded *50 against by the exercise of ordinary and reasonable foresight, care, and skill.”
These general principles are also declared in B. & O. Rd. Co. v. Sulphur Spring School Dist., 96 Pa. St., 65, 70, and Crawford v. Rambo, 44 Ohio St., 279. They are in keeping with the clear and plain dictates of justice. They hold a property owner to the performance of every proper duty to his neighbor, but they do not offend conscience by requiring the impossible.
It will be observed that the issues presented by the pleadings in the case we have here were evidently made in view of this state of the law.
In substance the charges of negligence against the city are that it failed to provide adequate outlets for the outflow of water in times of heavy rains; that it failed to keep existing outlets open' as it should have done under the circumstances which involved probable danger; and that it unnecessarily cut the bank at or near plaintiffs’ premises and thereby permitted the water to rush over plaintiffs’ land.
The answer of the city denies all allegations of negligence and fault on its part, and in evident recognition of its duty in connection with the reservoir and banks contains the allegations above referred to, which, if true, relieved the city of any liability in the case, under the principles of law above stated.
Considerable testimony was adduced by the parties touching the issues thus made, and the contest from the first has been waged chiefly concerning the facts.
*51 The court of appeals in the performance of its duty to consider the weight of the evidence did not find that the verdict in favor of defendant was not sustained by sufficient evidence.
The special charges given by the trial court and held to be erroneous by the court of appeals are as follows:
“1. Defendant before argument requests the court to charge the jury that if they believe from the testimony that an unprecedented rainfall and flood which could not have been reasonably anticipated by an ordinarily cautious person, was the efficient cause, the one cause that necessarily set in operation said causes contributing to plaintiffs’ injury, that plaintiff cannot recover.
“2. Where an act of God intervenes between the wrongful conduct of the defendant and the injury complained of, this will relieve the defendant from liability, if the act of God appears to be the proximate cause of the loss or injury.
“6. Where the injury was proximately caused by the act of God, the law does not concern itself with duties, the observance or breach of which had nothing to do with the damage.”
With reference to the use of the words “proximate” and “proximately,” the court in its general charge, after fully and clearly stating the issues made by the pleadings, and defining the term “Act of God” substantially as it had been defined in the charge given at the request of plaintiffs before argument, explained to the jury the nature of instances in which acts of negligence 'of the nature of those alleged to have occurred in this case would *52 or would not be the proximate cause of injury, and charged that the burden of sustaining its defense that the “Act of God” was the direct and proximate cause of the injury rested on the defendant.
Where from a view of the whole charge it is seen that the jury has been given a comprehensive and intelligent instruction concerning the issues and the meaning of technical terms used, the .fact that a particular legal or technical word is also used in a portion of a special charge, or in the general charge, without such explanation or definition, should not be held to be erroneous.
Now, in this case we think it clear that the only possible meaning which the jury could have given to charge No. 1 was that if they found that an unprecedented rainfall and flood, which could not have been reasonably anticipated, was the sole cause of plaintiffs’ injury, plaintiffs could not recover. As to Nos. 2 and 6, when considered by the jury in the light of the general charge, we can not conceive that they could fail to understand fully the meaning of the terms “proximate” and “proximately,” which were used in those charges, or that any prejudice could have resulted to the plaintiffs therefrom. Each case must be determined by its peculiar facts. And the question as to what was the proximate cause of injury in a case such as this is one of fact for the determination of the jury. Adams v. Young, 44 Ohio St., 80.
The court of appeals also held that the court erred in the following portion of its general charge, namely, “It is not material for you to determine whether defendant could have prevented the break *53 in the bank at the place where it occurred after its dangerous situation was discovered. There is no charge in the petition that the city could have prevented the same from breaking after its dangerous situation was discovered, and you may omit, therefore, that as a factor in determining the question of negligence.”
Immediately following this portion of the general charge is the following: “On the other hand, if the city officials did cut the bank and as a result thereof the water flowed upon plaintiffs’ lands which otherwise would not have gone there, it would be no defense that the cut was made to save lives or property, or for any other reason, because the answer does not attempt to justify the cutting of the bank, or give an excuse for doing so, simply denies that the city cut the bank.”
The court proceeded to state, that, if the jury found that the city cut the bank, the city was bound to use ordinary care to preserve the property of others in releasing the waters; and, if it was possible by the use of ordinary care to have cut the bank at either of the other places, and thus to have saved the plaintiffs’ property, it was its duty to have done so. And, further, that if the jury should find that the bank was cut by the defendant’s agents “and by the authority of the city as I have heretofore defined it to you, then you must determine whether the bank if left' alone and not cut would have gone out, and if it had gone out, whether the result would have been the same.”
From a careful consideration of this record in connection with the general knowledge concerning *54 this extraordinary flood we think that the jury were convinced that the flood itself was the sole cause of the injury complained of and that it could not have been prevented by the doing of any of the things suggested.
An apt illustration which has been suggested is that if a river levee had been maintained at the height of 10.feet, and the custodians of the levee had been warned that flood waters might require a levee 16 feet in height, and they neglected to so increase the height of the levee, and an unprecedented flood should ensue, during which it should appear that a levee 26 feet in height would not have held the flood waters, the parties responsible for the levee would not be liable for negligence in failing to maintain a 16-foot levee when a 26-foot levee would have been unavailing.
The answer in this case in effect tendered the clear issue that the damages to the plaintiffs’ property were caused solely by the “Act of God.” We think the finding of the jury amply justified by the record.
We have not been able to see that the supposed infirmities in the charge of the trial court, which have been pointed out by the learned court of appeals and by counsel, could have been prejudicial to the rights of the defendant in error, and the judgment of the court of appeals will be reversed and that of the common pleas will be affirmed.

Judgment reversed.

Newman, Jones, Matthias and Donahue, JJ., concur.